**UNITED STATES OF AMERICA, Plaintiff**
**v.**
**ALEX HODGE, Defendant**

Crim. No. 1999/66

District Court of the Virgin Islands

Division of St. Croix

February 24, 2000

Denise Hinds, AUSA, *H.I.D.T.A. Task Force*, Christiansted, St. Croix U.S. Virgin Islands, *for Government*

Jomo Meade, Esq., Frederiksted, St. Croix U.S. Virgin Islands, *for Defendant*

## MEMORANDUM OPINION

Finch, *Chief Judge*

This matter comes before the Court on two motions by Defendant Alex Hodge: (1) his motion to suppress evidence obtained near the scene of his arrest and during a search of his home, and (2) his motion to dismiss Count III of the Indictment as multiplicitous and as based on an unconstitutional exercise of congressional power. For the reasons expressed below, Defendant's Motion to Suppress will be granted in part and denied in part, and Defendant's Motion to Dismiss Count III will be denied.

### I. Background

Alex Hodge is charged by Indictment with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a)(2), possession of a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii), and possession of a controlled substance with intent to distribute within one-thousand feet of a school, in violation of the Drug-Free School Zones Act, 21 U.S.C. §§ 860(a) (the "Schoolyard Statute").

On July 19, 1999, at approximately 1:15 p.m., joint federal and local law-enforcement agents received a tip from a known and reliable informant that a tall, black male of medium build with dreadlocks and known as "Flex" would soon make a delivery of crack cocaine. The informant told the agents the delivery would occur in the vicinity of a specific clothing store on King Street in Frederiksted, St. Croix. The subject would be driving a rented, blue Mazda Protégé. Acting on this tip, the agents positioned themselves in the identified location. They surveyed the area and at about 1:30 p.m. observed Defendant Hodge — whose automobile and person fit "Flex's" description —arrive at the scene and approach another man known to the agents to be a drug user. The agents observed Hodge placing his hand inside the front of his pants while approaching the other man, as though attempting to retrieve an item. As the agents converged on the men,[1] both men fled on foot. A chase ensued during which the officers pursuing Hodge saw him discard what appeared to be a plastic bag. Eventually the officers caught and detained Hodge, searched the area in which the bag was thought to have been discarded, recovered two plastic bags containing crack cocaine, and arrested Hodge.

Following the arrest and after confirming Hodge's identity, the agents traveled immediately to Hodge's home where they observed in the driveway a red Acura Integra automobile they knew to belong to Hodge. The agents then entered an adjacent property and questioned the occupant, Hodge's girlfriend's mother, to confirm Hodge's residence and inquire as to his whereabouts earlier in the day. Despite their being told that Hodge was not seen at home since early that morning, the agents secured a search warrant and searched Hodge's house, automobile and a dog house in his yard. The search produced approximately 601 grams of crack cocaine, 33.7 grams of marijuana, a Tec-9 machine gun and live ammunition.

In his Motion to Suppress, Hodge now seeks suppression of (1) the discarded bags of crack cocaine on the basis that his arrest was

---

[1] Although it is disputed whether the agents' weapons were drawn during this approach, Agent David Levering testified persuasively at the suppression hearing that they were not.

invalid, and (2) all evidence found during the search of his home on the basis that the affidavit in support of the search warrant was insufficient to justify the magistrate's finding of probable cause. In his Motion to Dismiss, Hodge argues that Count III of the Indictment is multiplicitous and is based on an unconstitutional exercise of congressional power.

## II. Defendant's Motion to Suppress

## A. The Discarded Bags of Crack Cocaine

In determining whether to suppress the discarded bags of crack cocaine, the Court in this case need not consider the validity of Hodge's arrest. Because a seizure must exist before evidence may be considered fruit of that seizure, the threshold question before the Court is whether Hodge had been "seized" within the meaning of the Fourth Amendment at the time the officers saw him discard the bags of crack cocaine. *See California v. Hodari D.*, 499 U.S. 621, 623, 113 L. Ed. 2d 690, 111 S. Ct. 1547 (1991). If he had, and the seizure was illegal, the Court must suppress any evidence obtained as a result of the seizure. However, if he had not been seized at the time the agents became aware of the evidence, suppression must be denied. *See id.*

The United States Supreme Court has held that no seizure exists for Fourth Amendment purposes until a suspect is physically apprehended or submits to a showing of police authority. *Id.* at 629. In the instant case, Hodge was not physically apprehended by the officers giving chase until *after* he allegedly discarded the bags of crack cocaine. Thus, the only question regarding seizure is whether Hodge submitted to a "show of authority" prior to discarding the drugs, causing him to be "seized" under the meaning of the Fourth Amendment at the time he tossed away the bags. *See id.* at 623. On that question, the facts of *Hodari D.* are nearly identical to the instant case: in *Hodari D.*, the fleeing suspect was seen discarding a rock of crack cocaine while being pursued by police. Even though there was a show of authority by the police — i.e., Hodari knew his pursuers were police and they were shouting at him to stop — the Court found that Hodari failed to *submit* to the show of authority because he continued to run. *Id.* at 629. As such, Hodari had not been "seized" at the time he dropped the drugs, and the evidence

he abandoned before he was seized could not be suppressed as fruit of the later seizure. *See id.*

■ Likewise, then, even assuming the agents' pursuit of Hodge constituted a "show of authority," such a showing does not amount to a seizure because Hodge did not submit to the authority — instead he ran. *See id.* Because Hodge had not been seized under the meaning of the Fourth Amendment when he allegedly discarded the drugs, the bags are not the fruit of an illegal seizure. Therefore, Hodge's Motion to Suppress must be denied with respect to the bags of crack cocaine.

## B. The Validity of Hodge's Arrest

■ The parties argue extensively concerning whether Hodge's arrest was valid. While the validity of the arrest is irrelevant to the issue of suppression of the bags of crack cocaine, the Court finds the arrest to be valid to the extent it is a relevant factor in the issuance of the search warrant in this case, as discussed below. Officers may stop and interrogate a person reasonably suspected of criminal activity if the officers have specific and articulable facts in support of their suspicion that criminal activity is afoot. *See Terry v. Ohio,* 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Unprovoked flight from law-enforcement agents, such as Hodge's flight in this case, is itself sufficient to provide the reasonable suspicion necessary to make an investigative "Terry-stop." *See Illinois v. Wardlow,* 145 L. Ed. 2d 570, 120 S. Ct. 673, 2000 WL 16315, at *4 (S. Ct. 2000). Moreover, the officers' suspicion in the present case was furthered by the informant's tip and the officers' corroboration of the informant's predictions.[2] Thus, there is no question that the reasonable suspicion requirement was satisfied and Hodge's stop was justified.

■ The officers' reasonable suspicion became probable cause to apprehend Hodge when, in the course of pursuing Hodge to make

---

[2] In approaching the scene, the agents were acting on a tip from an informant previously known to be reliable. The informant gave a detailed account of the transaction including a physical description of the subject (a black male of medium build with dreadlocks); his automobile (a blue Mazda Protege); his street name ("Flex"); the date and time of the transaction (mid-day, July 19th); the location (King Street, Frederiksted); and the substance of the transaction (crack cocaine).

the Terry-stop, the officers observed him discarding plastic bags thought to contain crack cocaine. *See Terry*, 392 U.S. at 10. Hodge's arrest was therefore legal and his arguments to the contrary fail.

## C. The Evidence Seized from Hodge's Home

### 1. The Warrant to Search Hodge's House

Following Hodge's arrest, the agents obtained a warrant and searched Hodge's home and automobile revealing incriminating evidence. Hodge now seeks to suppress the fruits of the search on the basis that the affidavit in support of the search warrant lacked a sufficient nexus to Hodge's home to justify a finding of probable cause.

■ In determining whether probable cause to issue a search warrant exists, a magistrate's task is to evaluate the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983). The magistrate is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* There must be a sufficient nexus between the contraband to be seized and the place to be searched before a warrant may be issued. *See id.; United States v. Loy*, 191 F.3d 360, 365 (3rd Cir. 1999).

■ When faced with a challenge to a magistrate's probable cause determination, a reviewing court's role is limited. Rather than conducting a de novo review, it must simply ensure that the magistrate had a substantial basis for concluding, on the evidence presented, that probable cause existed. 462 U.S. at 238-39; *United States v. Williams*, 3 F.3d 69, 72 (3d Cir. 1993). In doing so, the reviewing court may consider only the information brought to the magistrate's attention — in this case, the four corners of the affidavit.[3] *See United States v. Jacobsen*, 466 U.S. 109, 112 n. 2, 80 L. Ed. 2d 85, 104 S. Ct. 1652 (1984) (citations omitted); *United States v. Conley*, 4 F.3d 1200, 1208 (3rd Cir. 1993). The reviewing court "is to

---

[3] The record does not show that the magistrate was provided with any information other than the affidavit on which to base his probable cause determination.

uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found." *Conley*, 4 F.3d at 1205; *see also United States v. Jones*, 28 V.I. 375, 994 F.2d 1051, 1055 (3rd Cir. 1993). In determining whether a substantial basis exists, the district court must not simply "rubber stamp" a magistrate's conclusions regarding probable cause. *See United States v. Loy*, 191 F.3d 360, 365 (3d Cir.1999); *Conley*, 4 F.3d at 1205. Yet a magistrate's "determination of probable cause should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969)). "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Gates*, 462 U.S. at 236 (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965)). "A grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Gates*, 462 U.S. at 236 (quoting *Ventresca*, 380 U.S. at 108).

Applying this deferential standard, the Court must first review the affidavit of Agent Samuel Abraham in support of the search warrant in this case.[4] In his affidavit, Abraham detailed the events

---

[4] The affidavit states in full:

(1) I am a detective with the Virgin Islands Police Department, currently assigned to the High Intensity Drug Trafficking Area (HIDTA) Task Force, St. Croix, Virgin Islands. I have been a police officer for seven year [sic] — having been a task force officer with the HIDTA Task force for three. I have participated in numerous investigations relating to narcotics trafficking investigations.

(2) I am familiar with the facts and circumstances surrounding the investigation of the activities of Alex Hodge (hereinafter "Hodge").

(3) This affidavit is being prepared in support of an application for search warrant and contains information relevant to that application, but not necessarily all information known to this officer or to other officers involved in the case.

(4) On or about July 18, 1999, an agent assigned to the HIDTA Task Force received information from a confidential informant (hereafter "CI") who has on previous occasions provided accurate and reliable information regarding criminal activity in St. Croix.

(5) The CI stated that Alex Hodge was scheduled to make a delivery of crack cocaine on King Street, Frederiksted, St. Croix in the vicinity of Melody Fashion at mid-day on July 19, 1999.

(6) At mid-day on July 19, 1999, your affiant, along with several additional agents from the HIDTA task force were [sic] present on King Street, Frederiksted, in the vicinity of Melody Fashion and observed Hodge exit a dark blue Mazda Protege and approach another individual. He and the other individual then attempted to engage in what appeared in your affiants [sic] experience to be a drug transaction. Hodge was observed approaching another

leading to Hodge's arrest but made no factual assertions linking Hodge's home to the alleged crime. The affidavit's single nexus to Hodge's home was Abraham's general averment that "Based on my training and experience as a law enforcement officer, I know that persons involved in the receipt and distribution of controlled substances commonly keep within their residences evidence of their criminal activity." Abraham's affidavit did not indicate that Hodge's alleged drug activity on King Street was in close proxim-

---

individual who is known to HIDTA task force agents to be a drug user. As he approached this individual Hodge was placing his hand inside his the [sic] front groin area of his pants as if he were trying to retrieve something. Your affiant knows, based upon his experience that drugs are often secreted in the groin area during transactions so that the drugs may be concealed from police officers.

(7) Hodge upon sight of the HIDTA agents, fled on foot to the back of a residence on King Street when he came to a dead end behind the house — a large trash can blocked his path. Agents observed what appeared to be a plastic sandwich bag in his left hand. As HIDTA agents began to approach Hodge, they saw Hodge drop what appeared to be a plastic sandwich bag with his left hand behind the trash can on its (the trash can [sic] left side.

(8) Hodge was apprehended. HIDTA agents retreived [sic] two plastic sandwich bags together (one lying on top the other [sic] from the area left of the above-referenced trash can. Also found, immediately next to the sandwich bags was a one dollar bill ($1.00) bill [sic] and a five dollar ($5.00) [sic] The sandwich bags retrieved contained large chunks of yellowish colored substance believed to be crack cocaine-of approximately 1/8 to 1/4 of a kilogram.

(9) One of the HIDTA agents knew that Hodge is known to reside in a single family, one story white home with a reddish brown foundation, located to the rear of Number 48 White Bay, Frederiksted, St. Croix but not attached to it. Further this HIDTA agent knew that Hodge is known to drive a red Integra Acura, and a rented dark blue four door Mazda Protege.

(10) After the arrest, HIDTA agents traveled to the location described above, believed to be the residence of Hodge. At the residence, HIDTA agents observed the red Integra Acura that Hodge is known to drive parked in front of the residence described above.

(11) [sic] Further, while at the subject location, HIDTA agents were told by the a [sic] resident of # 48 White Bay - in [sic] that Hodge resides in the residence behind the resident's home (the single family, one story white home with a reddish brown foundation).

(11) [sic] Based on the forgoing [sic], your affiant believes that Hodge's current residence is a single family, one story white home with a reddish brown foundation, located to the rear of Number 48 White Bay, Frederiksted, St. Croix but not attached to it.

(12) The quantity of cocaine involved in this attempted transaction and the circumstances surround [sic] his arrest indicated that Hodge was possessing the crack cocaine with an intent to distribute it. Based upon my training and experience as a law enforcement officer, I know that persons involved in the receipt and distribution of controlled substances commonly keep within their residences evidence of their criminal activity. Such evidence may be in the form of packaging, wrapping, and weighing equipment and materials, ledgers and account books, address and telephone books, firearms, proceeds of trafficking activities and property acquired with proceeds, controlled substances and other indicia of the possession and distribution of controlled substances. I believe that there is probable cause to believe that there is evidence relating to federal offense(s) including Possession with Intent to Distribute a Controlled Substance, and related offenses, and violations of the Virgin Islands Code relating to controlled substances will be found at the residence, and the two vehicles described in the Application for Search Warrant [sic].

ity to his home. Nor did it allege that Hodge had previously used his residence to hide drugs, or that Hodge was seen leaving his residence prior to the activity. *See United States v. Loy,* 191 F.3d at 365-66 (3rd Cir. 1999) (suggesting that such factors would help to support a finding of probable cause). The opposite is in fact true: the agents apparently never observed Hodge at his home. The affidavit indicated that Hodge was last seen at his home by a neighbor early on the morning of his arrest. Moreover, the affidavit's statement of the informant's tip showed no connection to Hodge's house, but merely predicted a drug delivery on King Street. Even the automobile described by the informant and used in the alleged delivery (a blue Mazda Protégé) was a different car than the one found parked at Hodge's house (a red Acura Integra). Thus, it is evident that the sole bases for issuance of the search warrant in this case were Hodge's arrest near King Street and Officer Abraham's professional opinion that drug dealers keep evidence of the trade within their homes.

The question before the Court, then, is whether an officer's opinion, when coupled with a drug arrest, provides a substantial basis for finding probable cause where no facts link the defendant's home to the criminal activity. Instructive on the value to be given an officer's opinion is *Nathanson v. United States,* 290 U.S. 41, 78 L. Ed. 159, 54 S. Ct. 11 (1933), in which the Supreme Court held that "[u]nder the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefore from *facts or circumstances* presented to him under oath or affirmation. *Mere affirmance of belief or suspicion is not enough." Id.* at 46-47 (emphasis added). In *Nathanson,* the warrant in question was issued upon an affiant's statement that he "has cause to suspect and does believe that certain merchandise . . . is deposited and contained within the premises" to be searched. *Id.* at 44. The Court noted that that statement was "a mere affirmation of suspicion and belief without any statement of adequate supporting facts" and was thus invalid as a basis for probable cause. *Id.* at 46-47, *construed in Aguilar v. Texas,* 378 U.S. 108, 112, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964). More recently in *Illinois v. Gates,* 462 U.S. 213, 239, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), the Court stated that "sufficient information must be presented to the magistrate to

allow that official to determine probable cause: his action cannot be a mere ratification of the bare conclusions of others."

Similarly, inferences to be drawn from facts or circumstances must be drawn by a neutral magistrate rather than by a law-· enforcement officer. Reliance on an affiant's inferences must not replace the role of the magistrate. *See Johnson v. United States*, 333 U.S. 10, 13, 92 L. Ed. 436, 68 S. Ct. 367 (1948). "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Id. at 13-14. The question of "[w]hen the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent. *Id.* The magistrate "must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion . . . ." *Giordenello v. United States*, 357 U.S. 480, 486, 2 L. Ed. 2d 1503, 78 S. Ct. 1245 (1958) (analyzing the grant of an arrest warrant).

Despite this Supreme Court law in support of the notion that only a neutral judicial officer may find probable cause to issue a warrant, and only from a factual nexus to the home, the Government argues that Officer Abraham's opinion, together with Hodge's arrest, constitutes a substantial basis in the Third Circuit on which to find probable cause. The Government bases its assertion on *United States v. Jones*, 28 V.I. 375, 994 F.2d 1051 (3rd Cir. 1993), which states that no direct evidence is required linking the crime to the place to be searched. 994 F.2d at 1056. Under *Jones*, probable cause may instead be inferred by "considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment, and normal inferences about where a criminal might hide [] property." *Id.*

This Court recognizes the law of the Third Circuit that no "direct" evidence is required for the issuance of a warrant. The Court further recognizes that under Jones, a magistrate is entitled

to draw inferences from the defendant's arrest, surrounding facts, and the opinion and experience of the affiant. *See id.; Texas v. Brown,* 460 U.S. 730, 742, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983). However, *Jones* cannot be read to support the argument that no nexus whatsoever to the home is required. Such a reading would belie established principles of search-and-seizure law. For example, pertinent to the instant case is the well-settled rule that probable cause to arrest does not in itself provide probable cause to search the arrestee's home. *See Jones,* 944 F.2d at 1055 ("if this were not true, then the Supreme Court's decision . . . limiting the area that police can search when arresting a person in his home, would make little sense."). To permit an affiant's opinion to be the sole basis for a search warrant, when that opinion is based on the defendant's arrest alone, would effectively eviscerate that rule. *See United States v. Guzman,* 1998 U.S. Dist. LEXIS 1538, 1998 WL 61850, at *4 (S.D.N.Y. 1998). Therefore, in drawing "normal inferences" from the facts, the fact that there is probable cause for an arrest must simply be one factor in determining whether there is probable cause to issue a search warrant. *See Jones,* 994 F.2d at 1055-56. The affidavit must also contain facts tying the illegal activity to the place to be searched. *See Zurcher v. Stanford Daily,* 436 U.S. 547, 556, 56 L. Ed. 2d 525, 98 S. Ct. 1970 (1978). "The critical element in a reasonable search is not that the owner of the property is suspected of [a] crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Id.*

Moreover, in considering the Government's reliance on *Jones,* it must be noted that while the Jones court upheld the disputed search warrant, it expressly avoided basing that holding on the fact that the alleged crime involved articles of the "type" likely to be hidden in the home. See Jones, 994 F.2d at 1056. In Jones, warrants were issued to search the homes of three robbery suspects. Though the court noted that "*most* of the information in the affidavit served to link the defendants to the crime in general," the court found that other facts in the affidavit "provided a *sufficient link between the defendants' homes and the crime to allow the warrants." Id.* at 1057 (emphasis added). The affidavit indicated that a cellular telephone taken during the robbery was located in a suspect's home, and that

each suspect had a new motorcycle, purchased with cash, parked outside his home. As a result, the court found that "we do not have to decide whether in every case the fact that a suspect committed a crime involving cash and/or a gun automatically provides a magistrate with enough information to approve a search of the suspect's home." *Id.* at 1056. The specific items alone provided a sufficient nexus. Moreover, in *Jones*, unlike in the present case, the suspects had a two-week opportunity after the alleged crime within which to hide stolen property in their homes.

Because *Jones* differs from the present case in that the affidavit contained links to the suspects' homes, this Court relies instead on *United States v. Loy*, 191 F.3d 360 (3rd Cir. 1999), a case more precisely on point. In *Loy*, the Court of Appeals for the Third Circuit rejected a finding of probable cause grounded on a postal inspector's statement in the affidavit that "based on his experience, those who collect pornographic materials involving minors 'commonly . . . maintain this material in the privacy of their own homes.'" *Id.* at 366. The court based its holding in part on a conflicting statement by the defendant that he kept only the "stuff that's legal" at his home. *Id.* at 367, n. 4. However, the court also based its conclusion on the fact that the affidavit did not contain any factual evidence that "Loy had previously transported child pornography from his private post office box to his residence or that he would do so in this instance. Nor were there any facts indicating that Loy had used his residence in the past for receiving child pornography." *Id.* at 365-66.[5]

This Court also finds persuasive the reasoning of the Court of Appeals for the Fourth Circuit in a case that is factually similar to the present one in its lack of nexus. *See, United States v. Lalor*, 996 F.2d 1578 (4th Cir. 1993). In *Lalor*, the affidavit attempted to establish a nexus between drug activity and the defendant's

---

[5] The courts of other circuits are in conflict on the issue of whether an officer's statement of experience may provide probable cause. *See, e.g., United States v. Thomas*, 300 U.S. App. D.C. 380, 989 F.2d 1252 (D.C. Cir. 1993) (affidavit stating officer's opinion, based on experience and a drug arrest, that additional evidence would be found at defendant's residence establishes probable cause despite lack of facts indicating criminal activity occurred at defendant's home); *but c.f., United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994) (officer's training and experience cannot substitute for lack of evidentiary nexus tying criminal activity to place to be searched). *See also United States v. Guzman*, 1998 WL 61850, at *4 (S.D.N.Y. 1998) (citing cases in disagreement on this issue).

residence in the following way: first, the affidavit showed corroboration of informants' tips about ongoing drug-sale activity that occurred away from the suspect's home. Secondly, the affidavit showed that officers corroborated information, unrelated to the drug sales, about where the suspect in fact lived. Despite those facts being confirmed, the court found that

> the affidavit is devoid of any basis from which the magistrate could infer that evidence of drug activity would be found at 1572 Waverly Way. The affidavit does not describe circumstances that indicate such evidence was likely to be stored at Lalor's residence . . . . Nor does the affidavit explain the geographic relationship between the area where the drug sales occurred and 1562 Waverly Way. Although the magistrate might have been able to draw an inference from the proximity of the drug sales to Lalor's residence, the record contains no evidence concerning this distance. The magistrate was given no basis for making a judgment concerning this aspect of probable cause.

*Id.* at 1582-83.

Several district courts agree that an affiant's statement of opinion and experience is an insubstantial basis for probable cause. To issue "a search warrant based solely on the self-avowed expertise of a law-enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect." *United States v. Rosario*, 918 F. Supp. 524, 531 (D.R.I. 1996); *see also United States v. Gomez*, 652 F. Supp. 461, 463 (E.D.N.Y. 1987) (same conclusion where supporting affidavit relied exclusively on the agent's expert opinion that "narcotics traffickers often keep records in their residences"). It is clear that without the requirement of a factual nexus, law enforcement officers could, by way of expert opinion, effectively create probable cause upon a suspect's arrest. *See Guzman*, 1998 WL 61850, *4 (S.D.N.Y.). This is improper, as an officer's experience is not a talisman before which the requirements of the Fourth Amendment disappear. *Willowby v. Philadelphia*, 946 F. Supp. 369, 375-76 (E.D.Pa. 1996) (discussing the reasonable suspicion requirement for a police stop).

■ In light of the above cases, this Court concludes that even according great deference to the magistrate, Abraham's affidavit did not provide a substantial basis for finding probable cause. Without any factual nexus to the defendant's home, to find a substantial basis in an officer's opinion would substitute the judgment of the affiant for that of the neutral magistrate and would subvert the requirement that the official drawing inferences from presented facts be neutral and detached from the "competitive enterprise of ferreting out crime." *See Johnson v. United States,* 333 U.S. 10, 13, 92 L. Ed. 436, 68 S. Ct. 367 (1948). Moreover, because Abraham's opinion that the search would reveal drugs is based solely on Abraham's knowledge of the circumstances surrounding Hodge's drug-related arrest, the persuasive value of Abraham's opinion is even more tenuous. If an arrest is an insufficient basis to justify a magistrate's finding of probable cause, an officer's professional opinion about drug-crime arrestees in general should also be an insufficient basis. While the Court does not doubt that Officer Abraham's opinion in the present case was well-intended, the Court is not entitled to rely on that fact. Exclusive reliance on an officer's opinion, which inevitably has the potential to be self-serving, is precisely what the warrant requirement is intended to prevent. "If there is one bright star in the Fourth Amendment heaven, it is that probable cause must be shown on the basis of facts rather than mere conclusions." W.R. LaFave, 2 Search and Seizure § 3.2(d), at 57 (1996 ed.). Therefore, the Court finds that the search warrant issued in this case lacks probable cause.

## 2. The Good-Faith Exception to the Warrant Requirement

The Court must next determine whether to suppress the evidence obtained under the search warrant. Where a search warrant is declared to have been issued without probable cause, suppression is not warranted as long as the evidence was obtained in "objectively reasonable reliance on [the] subsequently invalidated search warrant." *United States v. Leon,* 468 U.S. 897, 922, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984); *see also United States v. Williams,* 3 F.3d 69, 73 (3rd Cir. 1993). This "good faith" exception to the general rule that evidence seized without probable cause should be suppressed is based on the premise that the suppression remedy is

450

designed to deter unlawful police conduct. *Leon*, 468 U.S. at 897; *Williams*, 3 F.3d at 73. And "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and has acted within its scope, suppression of the fruits of the search . . . will serve only marginal deterrent purposes which do not justify the substantial costs of exclusion." *Williams*, 3 F.3d at 73 (quoting *Leon*, 468 U.S. at 922) (internal quotations omitted). Therefore, a "warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Williams*, 3 F.3d at 73 (quoting *Leon*, 468 U.S. at 922) (internal quotations omitted).

However, the good-faith exception to the warrant requirement recognizes that suppression remains an appropriate remedy where a reasonably well-trained officer would realize that the underlying affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975)).[6] This basis for suppression is appropriate in the present case. Here, no sophisticated analysis by law-enforcement officers was required in order to determine that official belief in the warrant was unreasonable. This is not a close case concerning whether probable cause existed. If it were, the Court would have deferred to the magistrate's finding of probable cause. *See Gates* 462 U.S. at 236 (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965)) ("[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."). This is a case in which the affidavit contained mere conclusory assertions, and not even "a single piece of evidence which the law of the stationhouse shop would recognize" as sufficient to connect

---

[6] There are four situations in which the *Leon* good-faith exception does not apply: (1) where the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) where the magistrate abandoned his judicial role and failed to perform his neutral and detached function; (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized. *See Leon*, 468 U.S. at 923; *United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087 (3d Cir. 1989).

the evidence sought to the place to be searched. *See Williams*, 3 F.3d at 74.

■ The warrant in this case was defective because it relied solely on the officer's opinion to satisfy the requirement of a nexus to the Defendant's home. It would require circular reasoning to find, under the good-faith exception, that an officer is entitled to rely on the magistrate's finding of probable cause, where the magistrate's finding of probable cause was made in sole reliance on that officer's opinion. Such a finding would permit law enforcement to circumvent the warrant requirement, and would allow an officer to undetectably act in bad faith in so doing. Where such potential for abuse is present, the Court may not assume that evidence was seized in reasonable, good-faith reliance on a search warrant. Suppression in such a case will serve precisely the deterrent purpose it was intended to further. Therefore, the evidence seized in the search of Hodge's house will be suppressed.

### III. Defendant's Motion to Dismiss Count III of the Indictment

### A. Constitutionality of the Drug Free School Zones Act

Count III of the Indictment charges Hodge under the Drug Free School Zones Act, 21 U.S.C. § 860(a) (the "Schoolyard Statute"), which enhances the sentence of "any person who violates section § 841(a)(1) or § 856 of that title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational or secondary school . . . ." Hodge's home is located within one thousand feet of the Arthur Richards Junior High School.[7]

■ Hodge argues that Count III must be dismissed because the Schoolyard Statute is an unconstitutional exercise of Congress' power under the Commerce Clause of the United States Constitution. His argument is grounded on *United States v. Lopez*, 514 U.S.

---

[7]The record does not indicate whether any evidence exists, other than that found in Defendant's home, to support the Schoolyard Statute charge. If no such evidence exists, the Court presumes the Government will drop Count III following this entry granting Defendant's Motion to Suppress the evidence seized during the search of his home.

452

549, 131 L. Ed. 2d 626, 115 S. Ct. 1624 (1995), which struck down the Gun-Free School Zones Act as an unconstitutional exercise of Congress' commerce power. However, the *Lopez* holding was based on the statute's lack of a jurisdictional element ensuring that the subject activity substantially affected interstate commerce. In contrast, the Schoolyard Statute in this case has previously been found to contain the necessary jurisdictional element, and therefore to be a constitutional exercise of Congress' commerce power. *See United States v. Orozco*, 98 F.3d 105 (3rd Cir. 1996) ("sale of 1080 grams of cocaine within one thousand feet of a school zone is an activity which 'substantially affects interstate commerce.'") Thus, Hodge's argument must fail.

## B. Multiplicitous Nature of Counts II and III

Hodge further argues that Count III must be dismissed because Count II and Count III of the Indictment are multiplicitous in that each requires proof of the same facts as the other. Count II of the Indictment charges Hodge with possession with intent to distribute a Schedule II controlled substance. Count III charges Hodge with the same act — possession with intent to distribute a Schedule II controlled substance — but within one thousand feet of a school.

"The test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 76 L. Ed. 306, 52 S. Ct. 180 (1932); *see also Ball v. United States*, 470 U.S. 856, 861, 84 L. Ed. 2d 740, 105 S. Ct. 1668 (1985); *United States v. Woodward*, 469 U.S. 105, 109, 83 L. Ed. 2d 518, 105 S. Ct. 611 (1985). If proof of an additional fact is required, "it is appropriate to conclude that the possibility of cumulative punishment was intended. If not, and if no other evidence of an intention to create separate offenses is found, it will be presumed that cumulative punishment was not intended." *Lovgren v. Byrne*, 787 F.2d 857, 863 (3rd Cir. 1986); *see also Missouri v. Hunter*, 459 U.S. 359, 366, 74 L. Ed. 2d 535, 103 S. Ct. 673 (1983).

■ The Court of Appeals for the Third Circuit has determined that a charge under the Schoolyard Statute is a separate substantive offense rather than a mere sentence enhancement on a

distribution charge. *United States v. McQuilkin*, 78 F.3d 105, 108-9 (3rd Cir. 1996). Such a charge includes a separate and distinct element — distribution within one thousand feet of a school — which must be charged and proven beyond a reasonable doubt. *Id.* Moreover, the Government is to be given considerable leeway in charging and trying–as distinguished from convicting and sentencing–overlapping charges. *See Ball v. United States*, 470 U.S. 856, 859, 84 L. Ed. 2d 740, 105 S. Ct. 1668 (1985) (defendant may be charged and tried, though not convicted, under statutes which prohibit, in a partially overlapping manner, the unlawful receipt and the unlawful possession of firearms). Based on *McQuilkin* and *Ball*, the Court declines to dismiss Count III of the indictment as multiplicitous.[8]

## IV. Conclusion

For the foregoing reasons, Hodge's Motion to Suppress is denied in part with respect to the bags of crack cocaine discarded at the scene of the arrest, and granted in part with respect to the evidence seized during the search of his home. Hodge's Motion to Dismiss Count III of the Indictment is denied. An appropriate Order is attached.

## ORDER

This matter comes before the Court on two motions by Defendant Alex Hodge: (1) his motion to suppress evidence obtained near the scene of his arrest and during a search of his home, and (2) his motion to dismiss Count III of the Indictment as multiplicitous and as based on an unconstitutional exercise of congressional power. In accordance with the attached Opinion, it is hereby

ORDERED that Defendant's Motion to Suppress is DENIED IN PART with respect to the bags of crack cocaine discarded at the

---

[8] In so deciding, the Court recognizes the law of other circuits in conflict on this issue. *See United States v. Shanks*, 97 F.3d 977, 980 (7th Cir. 1996) (in which the court found charges identical to those in the present case to be multiplicitous); *United States v. Baylor*, 321 U.S. App. D.C. 85, 97 F.3d 542, 548 (D.C. Cir. 1997) (treating the distribution charge as a lesser included offense of a School-Zone charge and finding that convictions for distribution merge with convictions under the Schoolyard Statute).

scene of the arrest, and GRANTED IN PART with respect to the evidence seized during the search of his home. It is further hereby

ORDERED that Defendant's Motion to Dismiss Count III of the Indictment is DENIED.