**UNITED STATES OF AMERICA; GOVERNMENT OF THE VIRGIN ISLANDS**

**v.**

**ELSON A. JONES; DWAYNE D. HUNTE; NEIL F. DANIEL, United States Attorney for the Virgin Islands, Appellant**

[994 F.2d 1051]

No. 92-7360

United States Court of Appeals

for the Third Circuit

May 28, 1993

H. PETER MABE, United States Attorney; JAMES R. FITZNER (Argued), Assistant U.S. Attorney, Christiansted, St. Croix, V.I., *for appellants*

MARK E. DAVIS (Argued), Christiansted, St. Croix, V.I., *for Elson A. Jones*

GEORGE W. CANNON, JR. (Argued) (ROSS & CANNON), Frederiksted, St. Croix, V.I., *for Dwayne D. Hunte*

MAURICE CUSICK (Argued), Christiansted, St. Croix, V.I., *for Neil F. Daniel*

BEFORE: GREENBERG, SCIRICA, and GARTH, *Circuit Judges*

## OPINION OF THE COURT

GREENBERG, *Circuit Judge*

## I. BACKGROUND

The United States Attorney for the Virgin Islands appeals from an order of the district court suppressing the evidence taken from the residences of defendants Elson A. Jones, Dwayne D. Hunte, and Neil F. Daniel during searches conducted on April 9, 1992, pursuant to three separate search warrants. A United States magistrate judge issued the search warrants on the basis of an affidavit of Virgin Islands police officer Arthur Hector, Jr. In its memorandum and order of July 6, 1992, the district court held that the affidavit did not establish probable cause to search the defendants' homes because it did not link the crime to the places to be searched. The district court further held that the searches were not saved by the good-faith exception to the probable cause requirement as set forth in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405 (1984), because the affidavit was so lacking in probable cause that the executing officers could not have reasonably relied on the warrants. Because we conclude that the magistrate judge had a substantial basis for concluding that there was probable cause, see Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332 (1983), we will reverse.

The relevant facts are as follows. On March 26, 1992, three men wearing dark clothing and ski masks and carrying firearms robbed Luis and Juliana Euristhe at their check cashing van. The men drove off with about $275,000,[1] a black cellular phone, and the van. Initially, the police arrested three individuals other than Jones, Hunte, and Daniel and charged them with committing the crime.

---

[1] The $275,000 figure is taken from Officer Hector's affidavit. According to the district court's opinion, the amount stolen was about $200,000. However, the actual amount taken is irrelevant for purposes of this appeal.

Although one of these original suspects confessed, he later denied his involvement and passed a polygraph. At that point, the original suspects were released.

On or about April 3, 1992, Hector received a phone call from a person he described as a "concerned citizen." This person told Hector that the robbers were the three defendants, Elson Jones, Neil Daniel, and Dwayne Hunte, and he gave Hector their approximate addresses. He also told Hector that a cellular phone taken in the robbery would be found in Daniel's residence. Finally, the person told Hector that Marba Sutton, Jones's girlfriend, had some of the cash taken in the robbery. Hector did not know the person's name and never had talked to him before and, indeed, never has spoken to him again. However, Hector stated in his affidavit that this person had no connection with the robbery or any other crimes, a conclusion he apparently reached based on the person's demeanor on the phone.

On April 8, Sergeant Ismael Ramirez of the Virgin Islands Police Department told Hector that a second "concerned citizen" told him that Jones was involved in the crime and that shortly after the robbery he had seen Elson Jones "in the bush" on Clifton Hill with a lot of cash and that Jones was tearing up checks and envelopes. This person showed Ramirez where Jones lived, 86 Clifton Hill.

On April 8, Ramirez drove by Jones's residence and saw three new Honda motorcycles parked outside. According to Hector's affidavit, Ramirez learned that Jones, Daniel, and Hunte each had registered a 1992 Honda motorcycle with the Virgin Islands Department of Motor Vehicles that same day. Later that day, Ramirez called the owner of A&B Honda in St. Croix who told him that Bella International Honda in Puerto Rico told him that each of the motorcycles recently had been purchased with $6000 cash. Insofar as appears from Hector's affidavit, the police did not investigate further before Hector applied for the warrants.

Based on Hector's affidavit,[2] on April 8, 1992, a United States magistrate judge for the District of the Virgin Islands issued three

---

[2] Officer Hector's affidavit, dated April 8, 1992, stated in full:

    I, ARTHUR S. HECTOR, JR., having been duly sworn, depose and state as follows:

    1. I am a police officer with the Virgin Islands Police Department and have been so employed for approximately 5 years;

    2. I have been assigned to investigate the March 26, 1992 armed robbery of Luis and Juliana Euristhe in which 3 men wearing dark clothing and ski

warrants to search the residences of Jones, Hunte, and Daniel for "U.S. Currency, hand guns, shot guns, black cellular telephone, ski masks, dark T. shirts, inked fingerprint impressions and photographs." The searches were largely successful and, based on evidence recovered in these searches, the defendants were arrested.[3]

---

masks, armed with pistols and shotguns took approximately $275,000.00 cash and a black cellular telephone from the Euristhes.

3. On approximately April 3, 1992 a concerned citizen with no connection to instant crimes, or, to my knowledge, any other crimes telephoned me and stated that he knew the names and residence locations of the 3 individuals who perpetrated the robbery as follows:

a. NEIL DANIEL (lives in Clifton Hill—make left by shanty past animal shelter, second-to-last house on right with green fence). The concerned citizen also stated that a cellular telephone taken during the robbery was located in this residence.

b. ELTON JONES (lives in Clifton Hill—take last left, continue up road where P. Officer[] Romero lives, house is second to last on right, grey in color with yellow trim). This suspect has a girlfriend by name of Marba Sutton who works at Galloway's Record Shop and has a portion of the cash taken during the robbery;

c. DUANE HUNT. This individual has been on St. Croix for 2 weeks and comes from Connecticut. (lives in Clifton Hill—from Central High School, take 1st left at front of hill, first house on right. House is big, yellow and has golden Honda Civic parked in the yard.

On April 8, 1992, V.I. Department Sgt. Ismael Ramirez informed me that on April 4, 1992 a concerned citizen informed him that he knew the identities of one of the individuals who robbed the Euristhes on March 26, 1992. The concerned citizen stated that he saw ELSON JONES with a lot of cash shortly after the robbery in the bush in Clifton Hill. At the time Jones was tearing up checks and envelopes. The concerned citizen showed Officer Ramirez where Jones lived at 86 Clifton Hill.

Officer Ramirez also told me that on April 8, 1992, he drove by 86 Clifton Hill and saw 3 brand new Honda motorcycles. Thereafter, Ramirez checked with V.I. D.M.V. and determined that ELSON JONES (86 Clifton Hill), NEIL DANIEL (27C Clifton Hill), and DWAYNE HUNT (136 Clifton Hill) registered 1992 Honda motorcycles on April 8, 1992. Also [o]n April 8, P. Ofc. Ramirez was told by the owner of A&B Honda in St. Croix that he had been told by Bella International Honda in Puerto Rico that each of the Hondas was recently purchased for $6000.00 cash.

[3] The warrants were executed on April 9 between 6:30 a.m. and 8:00 a.m. A large amount of cash was recovered as well as weapons. Furthermore, the police recovered a brown leather bag at Daniel's residence containing Luis Euristhe's checkbooks and passport. Brand new motorcycles were seized from each of the defendants' residences. In addition, receipts for purchases dated after the March 26 robbery and airline ticket stubs to Puerto Rico and Jamaica also were seized. By 10:00 a.m. that morning (April 9), all three defendants had been

The defendants subsequently were charged in an original and then a superseding indictment with first degree robbery, possession of a firearm during the robbery, unauthorized use of a vehicle, and transporting stolen money in interstate commerce. V.I. Code Ann. tit. 14, §§ 1862, 2253(a) and 1382 (Supp. 1990); 18 U.S.C. § 2314. Before the start of trial, the defendants jointly moved to suppress the evidence recovered during the searches. As noted, the district court granted this motion, and the government appealed.[4]

## II. DISCUSSION

This case requires us to consider the nexus between the crime and the place to be searched that must be set forth in an affidavit to allow the issuance of a search warrant. Because of the limited nature of our review, we do not determine whether the affidavit actually established probable cause, but simply whether it provided a "substantial basis" for finding probable cause. However, before we reach the merits of this appeal, we first must consider our jurisdiction.

### A. *Jurisdiction*

Pursuant to 18 U.S.C. § 3731, we have jurisdiction to review interlocutory appeals made from orders of a district court suppressing evidence. However, Daniel has challenged our jurisdiction on other grounds. In particular, he asserts that a defect in the notice of appeal filed by the United States Attorney deprives us of jurisdiction. He first points out that the second amended notice of appeal states that it is being filed on behalf of the Government of the Virgin Islands. He then notes that the superseding indictment which was returned before the entry of the July 6, 1992 suppression order was brought in the name of the United States. Daniel argues, therefore, that the notice of appeal violates Rule 3(c) of the Federal

---

arrested. By 10:16 a.m., defendants Daniel and Hunte signed "Advises" of Rights. Videotaped confessions also were obtained from Daniel and Hunte. Defendant Jones refused to sign the "Advise" of Rights form.

[4] The defendants also made other motions, such as motions to suppress their statements made at the time of arrest, but these motions were denied. We cannot review these rulings at this time because under 18 U.S.C. § 3731 only the government is allowed to take interlocutory appeals of suppression orders. See United States v. Johnson, 690 F.2d 60, 62-63 (3d Cir. 1982), cert. denied, 459 U.S. 1214, 103 S.Ct. 1212 (1983).

Rules of Appellate Procedure because it fails to indicate the actual party appealing, the United States. We reject Daniel's argument.

■ The purpose of Rule 3(c), insofar as it states that "[t]he notice of appeal shall specify the party or parties taking the appeal," is to provide notice to the court and the appellee of the parties participating in the appeal. Torres v. Oakland Scavenger Co., 487 U.S. 312, 318, 108 S.Ct. 2405, 2409 (1988); Cruz v. Melendez, 902 F.2d 232, 235 (3d Cir. 1990). Thus, we have deemed Rule 3(c) satisfied when the circumstances surrounding the appeal clearly indicate who is participating in the appeal. See, e.g., Masquerade Novelty, Inc. v. Unique Indus., Inc., 912 F.2d 663, 664-66 (3d Cir. 1990). Here the purpose of Rule 3(c) has been satisfied because there can be no doubt as to who is participating in this appeal.

■ Moreover, while the superseding indictment was brought on behalf of the United States, the substantively identical original indictment was brought in the name of the Government of the Virgin Islands. Furthermore, the prior motions and orders were captioned with the "Government of the Virgin Islands" as the plaintiff, and the original notice of appeal was captioned in both the names of the United States and the Government of the Virgin Islands. Thus, the persons preparing the orders and pleadings treated the United States and the Government of the Virgin Islands as interchangeable plaintiffs. It is clear, therefore, that the United States Attorney substantially complied with Rule 3(c). See Torres, 487 U.S. at 316, 108 S.Ct. at 2408 ("'mere technicalities' should not stand in the way of consideration of a case on its merits"). Therefore, we have jurisdiction and address the merits.

B. *The Merits*

The district court found that on its face the affidavit did not provide a substantial basis for a finding of probable cause to search the defendants' residences. See Illinois v. Gates, 462 U.S. at 238-39, 103 S.Ct. at 2332. In reaching this conclusion, the court did not question the facts contained in the affidavit. Accordingly, our review of the magistrate judge's probable cause determination is identical to that of the district court.[5] Additionally, we confine our review to the facts that were before the magistrate judge, i.e., the affidavit, and do not consider information from other portions of the record.

---

[5] Thus, we exercise plenary review over the order of suppression.

When faced with a challenge to a magistrate's probable cause determination, a reviewing court must remember that its role is limited. It is not to conduct a de novo review. Rather, it simply ensures that the magistrate had a substantial basis for concluding that probable cause existed. Illinois v. Gates, 462 U.S. at 238-39, 103 S.Ct. at 2332; United States v. Kepner, 843 F.2d 755, 762 (3d Cir. 1988). Of course, such deference "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions." United States v. Tehfe, 722 F.2d 1114, 1117 (3d Cir. 1983), cert. denied, 466 U.S. 904, 104 S.Ct. 1679 (1984). But it does mean that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 746 (1965).

The district court was cognizant of its limited role, but nevertheless found that the four corners of Hector's affidavit did not provide the magistrate judge with a substantial basis on which to conclude that evidence of a crime would be found in the defendants' residences. The district court stated that even under the Gates test the affidavit had to detail the underlying circumstances from which it could be concluded that evidence of a crime would be found in the places to be searched. The court concluded that neither direct observation nor normal inferences as to where the articles sought would be located provided the requisite nexus. In reaching its conclusion, the court stressed that there was a distinction between probable cause to arrest and probable cause to search.

We agree with the district court that there is a distinction between probable cause to arrest and probable cause to search for, as we noted in Tehfe, "search warrants are directed, not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found." 722 F.2d at 1117 (citing Zurcher v. Stanford Daily, 436 U.S. 547, 553-60, 98 S.Ct. 1970, 1975-78 (1978)); see also United States v. Besase, 521 F.2d 1306, 1308 (6th Cir. 1975) ("The specificity required by the Fourth Amendment is not as to the person against whom the evidence is to be used, but rather as to the place to be searched and the thing to be seized."). Thus, as the district court did, we start with the premise that probable cause to arrest does not automatically provide probable cause to search the arrestee's home. See United States v. Blakeney, 942 F.2d 1001, 1025 (6th Cir.), cert. denied, 112 S.Ct. 646 (1991), 112 S.Ct. 881 (1992); United States v. Freeman, 685 F.2d 942, 949 (5th Cir.

1982); United States v. Lucarz, 430 F.2d 1051, 1055 (9th Cir. 1970); 1 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.1(b) (2d ed. 1987). Indeed, if this were not true, then the Supreme Court's decision in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034 (1969), limiting the area that the police can search when arresting a person in his home, would make little sense. See Freeman, 685 F.2d at 949; Lucarz, 430 F.2d at 1055. However, accepting this premise does not mean that the information used to determine if there was probable cause to arrest is irrelevant when determining if there is probable cause to search. In fact, just the opposite is true. If there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases.

As the Supreme Court stated in Gates, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." 462 U.S. at 232, 103 S.Ct. at 2329. Therefore, when presented with an application for a search warrant, the task of a magistrate is "to make a practical, common-sense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238, 103 S.Ct. at 2332. While ideally every affidavit would contain direct evidence linking the place to be searched to the crime, it is well established that direct evidence is not required for the issuance of a search warrant. Instead, probable cause can be, and often is, inferred by "considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property." United States v. Jackson, 756 F.2d 703, 705 (9th Cir. 1985); accord United States v. Malin, 908 F.2d 163, 165-66 (7th Cir.), cert. denied, 498 U.S. 991, 111 S.Ct. 534 (1990); United States v. Jenkins, 901 F.2d 1075, 1080-81 (11th Cir.), cert. denied, 498 U.S. 901, 111 S.Ct. 259 (1990); United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988), cert. denied, 488 U.S. 1031, 109 S.Ct. 841 (1989); United States v. Charest, 602 F.2d 1015, 1017 (1st Cir. 1979).

Consideration of the normal inferences that can be drawn from Hector's affidavit reveals that, contrary to the district court's opinion, there was a substantial basis for the magistrate judge to believe that all the defendants' residences contained evidence of the crime. Admittedly most of the information in the affidavit served to link

the defendants to the crime in general. However, this connection in conjunction with the other facts in the affidavit which we discuss below provided a sufficient link between the defendants' homes and the crime to allow the magistrate judge to issue the warrants.

The affidavit revealed that the crime involved large amounts of cash and that the defendants had an opportunity (almost two weeks) to hide the cash in their residences. Both of these factors are important for cash is the type of loot that criminals seek to hide in secure places like their homes. See United States v. Hendrix, 752 F.2d 1226, 1231 (7th Cir.) ("it was likely that they would conceal the cash in the apartment rather than in some less secure and accessible place"), cert. denied, 471 U.S. 1021, 105 S.Ct. 2032 (1985); Lucarz, 430 F.2d at 1055 (noting that affidavit "showed that appellant had ample opportunity to make a trip home to hide the stolen envelopes"). While the affidavit indicated that some of the cash was outside the defendants' residences (some was in the possession of Marba Sutton and some was used to purchase motorcycles), the rest was unaccounted for. Cf. Jackson, 756 F.2d at 705 (noting that only $1,800 of $228,241 had been accounted for). Furthermore, the passage of two weeks, while certainly long enough to enable the defendants to hide the cash, was not so long as to dispel the likelihood that it would still be in their residences. Cf. id. ("The two month interval between the robbery and the search did not dispel the probability that the currency, or some of it, remained in Jackson's apartment."). Similarly, the other items sought, clothing and firearms, are also the types of evidence likely to be kept in a suspect's residence. See Anderson, 851 F.2d at 729 (listing cases that state that it is reasonable to assume that people keep guns in their homes); United States v. Jacobs, 715 F.2d 1343, 1346 (9th Cir. 1983) (per curiam) ("it was reasonable for the magistrate to conclude that such articles of clothing would remain at the residence").

Nonetheless, in our resolution of this appeal, we do not have to decide whether in every case the fact that a suspect committed a crime involving cash and/or a gun automatically provides a magistrate with enough information to approve a search of a suspect's home. We do not reach that question because two additional facts provided a nexus to the defendants' residences. First, the affidavit stated that a cellular phone taken during the robbery would be found in Daniel's residence. The presence of some stolen property in Daniel's residence reasonably could have suggested to the mag-

istrate judge that other contraband was not far away. Similarly, the motorcycles parked out front of Jones's residence and likely to have been bought with the stolen cash indicate that the defendants were not too careful about hiding the loot away from their homes.

It could be argued that while the affidavit provided sufficient extra information linking the crime to the residences of Daniel and Jones, no such extra information linked the crime to Hunte's home. While this is true, it must be remembered that Hunte did not act alone. The extra information regarding his co-defendants bears on the likelihood that Hunte also kept evidence in his home. After all, the three men acted similarly when they acquired motorcycles from a vendor in Puerto Rico. Moreover, all three defendants' homes were on St. Croix and thus were relatively near the site of the crime, making all of their homes a likely repository for evidence. Cf. United States v. Savoca, 739 F.2d 220, 224-25 (6th Cir. 1984) (noting that although there was probable cause to arrest defendant, fact that site of robbery was over 2,000 miles from place searched undermined probable cause to search), vacated on rehearing on other grounds, 761 F.2d 292 (6th Cir.), cert. denied, 474 U.S. 852, 106 S.Ct. 153 (1985); United States v. Green, 634 F.2d 222, 225-26 (5th Cir. 1981) (holding no probable cause to search defendant's house in Florida where crimes committed in California); United States v. Flanagan, 423 F.2d 745, 747 (5th Cir. 1970) ("The statement, even if reliable, that a named person who is a known felon has committed a burglary, plus possession by the suspect of some of the proceeds when arrested, does not without more authorize the issuance of a warrant to search the residence of the accused miles away.").[6] Therefore, because Hunte's residence was near the scene of the crime and the residences of his codefendants and because his codefendants' residences were linked to the crime, it was not unreasonable for the magistrate judge to conclude that Hunte's residence also was a likely source of evidence.

---

[6] While the proximity of the defendants' homes to the site of the crime tends to support the magistrate judge's determination that there was probable cause for issuance of the warrants, we are not by our citation of Savoca, Green, and Flanagan implying that a long distance between the site of a crime and a suspect's residence necessarily tends to negate an inference that otherwise might be drawn that evidence from the crime will be in the residence. After all, it might be very easy to transport the evidence, depending upon what it is, long distances quite quickly.

In reaching our conclusion, we recognize that a different magistrate judge might have found the affidavit insufficient to support a warrant. However, our role is not to make our own assessment as to whether probable cause existed. Rather, we are constrained to determine only whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made. We find that the affidavit satisfies this test.[7]

While Hector might have been able to supply the magistrate judge with a stronger link to the defendants' residences, the fact remains that he did bring the evidence he had to a magistrate judge, who determined that there was probable cause to issue the warrants. In reaching our conclusion, we are mindful that a "grudging or negative attitude by reviewing courts towards warrants" is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. United States v. Ventresca, 380 U.S. at 108, 85 S.Ct. at 746. Therefore, we will reverse the district court's suppression order as "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Id. at 109, 85 S.Ct. at 746.[8]

## III. CONCLUSION

For the reasons stated above, we will reverse the district court's order of July 6, 1992, granting defendants' joint motion for suppression of the evidence seized from their residences. We will remand the matter to the district court for further proceedings.

---

[7] We note that the district court did not find that the sources of the information in Hector's affidavit were unreliable. While Jones points out that the affidavit was in part based on hearsay, that circumstance was for the magistrate judge to consider in determining whether there was probable cause, see Illinois v. Gates, 426 U.S. at 230, 103 S.Ct. at 2328, and does not undermine our holding that there was a substantial basis for the magistrate judge to reach his conclusion. In this regard, we note that there were two "concerned citizen" sources of information and that the investigation by the police which revealed the motorcycle purchases tended to confirm this information.

[8] In light of our holding that there was substantial basis for the magistrate judge to conclude that there was probable cause, there is no need for us to address the issue as to whether the good-faith exception in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, applies.