

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-4-2001

# United States v. Hodge

Precedential or Non-Precedential:

Docket 00-3296

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"United States v. Hodge" (2001). *2001 Decisions.* Paper 68.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/68

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 5, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3296

UNITED STATES OF AMERICA,
      Appellant

v.

ALEX HODGE

ON APPEAL FROM THE DISTRICT COURT OF
THE VIRGIN ISLANDS

(Dist. Court No. Crim. 1999/66)
District Court Judge: Raymond L. Finch

Argued on December 7, 2000

Before: MANSMANN and ALITO, Circuit Judges, and
FULLAM, Senior District Judge.*

(Filed: April 5, 2001)

_____

* The Honorable John P. Fullam, Senior District Judge for the Eastern
District of Pennsylvania, sitting by designation.

DENISE A. HINDS (Argued)
Office of the United States Attorney
1108 King Street, Suite 201
Christiansted, St. Croix
United States Virgin Islands 00802

LOUIS M. FISCHER
United States Department of Justice
Criminal Division
P.O. Box 899
Ben Franklin Station
Washington, DC 20044-0899

MICHAEL A. ROTKER
United States Department of Justice
Civil Division
601 D Street, N.W.
Washington, DC 20530

MARC OSBORNE
United States Department of Justice
601 D Street, N.W., Suite 6111
Washington, DC 20530

 Counsel for Appellant

JOMO MEADE (Argued)
112 Queen Cross Street
Frederiksted, St. Croix
United States Virgin Islands 00840

 Counsel for Appellee

OPINION OF THE COURT

ALITO, Circuit Judge:

The Virgin Islands police arrested appellee Alex Hodge after he discarded two bags of crack cocaine while fleeing from police. Following the arrest and based on the affidavit of officer Samuel Abraham, the police obtained a search warrant for Hodge's residence. Hodge moved to suppress the evidence obtained during execution of the warrant, arguing that Abraham's affidavit failed to establish a

sufficient nexus between Hodge's criminal activity and his home. The District Court of the Virgin Islands granted Hodge's motion and the United States appealed. W e hold that the affidavit supporting the warrant pr ovided a substantial basis for finding probable cause to search Hodge's residence. Alternatively, wefind that the officers who executed the search relied on the warrant in objective good faith. Accordingly, we reverse the or der suppressing the evidence seized during the search of Hodge's home.

I.

As the outcome of this case hinges on the sufficiency of the affidavit supporting the warrant, the underlying facts are largely taken from that affidavit. When the affidavit was executed, Abraham, the affiant, had been a detective with the Virgin Islands Police for seven years. Appendix at 187 (App.). During the previous three years, Abraham had been assigned to the High Intensity Drug Traffic Area Task Force on St. Croix (HIDTA). Id. Abraham had "participated in numerous investigations related to nar cotics trafficking." Id.

On July 18, 1999, a confidential informant, who had previously "provided accurate and r eliable information regarding criminal activity in St. Cr oix," informed a member of the HIDTA "that Alex Hodge was scheduled to make a delivery of crack cocaine on King Street, Fr ederiksted, St. Croix in the vicinity of [a particular stor e] at mid-day on July 19, 1999." Id. On July 19, 1999, Abraham and other members of the HIDTA were stationed on King Street near the identified store "and observed Hodge exit a blue Mazda Protege and approach another individual" who was a known drug user. Id. at 187–88. "As he approached this individual Hodge" reached into the front "of his pants as if he were trying to retrieve something." Id. at 188. Abraham knew that sellers often store drugs in the fr ont of their pants to conceal the drugs from law enforcement. Id.

Hodge fled when he saw the HIDTA agents. Id. The agents observed that Hodge had "what appeared to be a plastic sandwich bag in his" hand and that he dropped the bag near a trash can. Id. The agents appr ehended Hodge and located two sandwich bags containing what appear ed to be

3

approximately 1/8 to 1/4 kilogram of crack cocaine near the trash can. Id. Hodge was arrested on the spot. Id.

A member of the HIDTA team knew that Hodge r esided in a home behind, but not attached to, the home at Number 48 White Bay, in the same city as the anticipated transaction--Frederiksted, St. Croix. Id. The agent also knew that Hodge drove a red Acura Integra as well as a rented, blue Mazda Protege. Id. HIDTA agents went to Hodge's suspected home and saw the red Integra parked there. Agents were also told by a r esident of Number 48 that Hodge lived in the home behind Number 48. Id. at 188-89.

Based on this information, Abraham averr ed that Hodge resided in the home behind Number 48. Id. at 189. Abraham also averred that "[t]he quantity of cocaine involved in [Hodge's] attempted transaction and the circumstances surround[ing] his arr est indicate[d] that Hodge was possessing the crack cocaine with an intent to distribute it." Id. "Based upon [his] training and experience," Abraham stated that he knew "that persons involved in the receipt and distribution of controlled substances commonly keep within their residences evidence of their criminal activity." Id.

Relying on Abraham's affidavit, a magistrate judge found probable cause to search Hodge's home. During the search, the police located approximately 600 grams of crack cocaine, over 30 grams of marijuana, a machine gun, and live ammunition. Hodge was indicted for possessing a firearm as a felon, possessing cocaine base with intent to distribute, and possessing cocaine base near a school, with intent to distribute. Prior to trial, Hodge successfully moved to suppress evidence seized during the sear ch of his residence. The suppression order must be reversed if (1) the affidavit provided a substantial basis for finding probable cause to search Hodge's home or (2) the officers relied on the warrant in objective good faith.

4

II. Probable Cause

A.

In ruling on Hodge's motion to suppress, the District Court "did not question the facts contained in the affidavit" supporting the search warrant. United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993). Accor dingly, this Court's review of the suppression order is plenary. Id. at 1055 & n.5; see also United States v. Conley, 4 F .3d 1200, 1204–05 (3d Cir. 1993). The Court sits like a district court and must, like the district court, give great defer ence to the magistrate judge's probable cause determination. See United States v. Loy, 191 F.3d 360, 365 (3d Cir. 1999); Conley, 4 F.3d at 1205.

A magistrate judge may find probable cause when, viewing the totality of the circumstances,"there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). This Court must uphold the finding if the affidavit on which it was based provided a substantial basis for finding probable cause. See id. at 236; Conley, 4 F.3d at 1205; Jones, 994 F.2d at 1054, 1055. The Court need not determine whether probable cause actually existed, but only whether there was "a `substantial basis' for finding probable cause." Jones, 994 F .2d at 1054; see id. at 1055, 1057. In making this determination, the Court confines itself "to the facts that were befor e the magistrate judge, i.e., the affidavit, and [does] not consider information from other portions of the record." Id. at 1055. "[T]he resolution of doubtful or marginal cases in this ar ea should be largely determined by the preference to be accorded to warrants." Id. at 1057–58 (quoting United States v. V entresca, 380 U.S. 102, 109 (1965)).

B.

Hodge argues, and the District Court agr eed, that the affidavit failed to establish a nexus between Hodge's drug activity and Hodge's home and thus did not pr ovide a sufficient basis for probable cause to sear ch the home.

5

"[D]irect evidence linking the place to be searched to the crime is not required for the issuance of a search warrant." Conley, 4 F.3d at 1207. "Instead, probable cause can be, and often is, inferred by `considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide' " the fruits of his crime. Jones, 994 F.2d 1056 (quoting United States v. Jackson, 756 F .2d 703, 705 (9th Cir. 1985)). A court "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000) (quoting United States v. Caicedo, 85 F .3d 1184, 1192 (6th Cir. 1996)).

In the present case, there is no dir ect evidence that drugs or drug paraphernalia would be located at Hodge's home. However, there was significant evidence from which the magistrate judge might reach that conclusion. Initially, the facts surrounding Hodge's arrest suggest that he was an experienced drug dealer who was operating a drug business. Cf. Whitner, 219 F.3d at 298. The amount of crack cocaine Hodge possessed indicated that he was "involved in selling drugs, rather than mer ely using them." Id. The fact that an informant, whose tip was corroborated by what actually happened, told the police that Hodge would be delivering cocaine at a particular time and location suggests both that Hodge's drug activities were organized and that Hodge was sufficiently involved in the drug trade that others knew of his activities. The prearranged nature of Hodge's dealing is likewise manifested by the fact that a known drug user was pr esent to meet Hodge at the time of the anticipated transaction. That Hodge appeared to carry the drugs in the front of his pants as is common to avoid detection also suggests that he had experience in the drug trade. Finally, Hodge's use of a rental car, another common practice in the drug trade, indicates that the anticipated transaction was not an isolated deal, but part of a larger business. See, e.g., United States v. $32,310.00, 1988 WL 169271, at *7 (D.N.J. June 23, 1988) ("[E]vidence indicated that r ental cars are often used to facilitate drug transactions since such cars are not subject to forfeiture."). All these facts combine to suggest

6

that Hodge was an experienced and repeat drug dealer who would need to store evidence of his illicit activities somewhere. See Whitner, 219 F.3d at 298.

It is reasonable to infer that a person involved in drug dealing on such a scale would store evidence of that dealing at his home. See id. at 297-98 (citing cases from other circuits); United States v. Feliz, 182 F.3d 82, 86-88 (1st Cir. 1999) (finding "sufficient showing of pr obable cause" for search of "long-time, successful, drug trafficker[`s]" apartment, despite lack of direct evidence linking apartment to trafficking); United States v. McClellan, 165 F.3d 535, 546 (7th Cir. 1999) (noting"that in the case of drug dealers evidence is likely to be found wher e the dealers live") (quoting United States v. Reddrick, 90 F.3d 1276, 1281 (7th Cir. 1996)) (emphasis omitted); United States v. Thomas, 989 F.2d 1252, 1255 (D.C. Cir. 1993) (per curiam) (upholding search of drug dealer's home and noting that "observations of illegal activity occurring away from the suspect's residence, can support a finding of probable cause to issue a search warrant for the r esidence, if there is a reasonable basis to infer from the nature of the illegal activity observed, that relevant evidence will be found in the residence"); United States v. Williams, 974 F.2d 480, 481-82 (4th Cir. 1992) (upholding search of known drug dealer's motel room despite lack of direct evidence that room was used in drug activities); cf. Jones, 994 F .2d at 1056 (cash, clothing, and firearms related to robbery were "the types of evidence likely to be kept in a suspect's residence"). A repeat drug dealer certainly has "the opportunity to conceal [drug-related evidence] in his home." Whitner, 219 F.3d at 298. In addition, such a person "logically could conclude that his residence is the best, and probably the only, location to store items such as recor ds of illicit activity, phone books, address books, large amounts of cash, assets purchased with proceeds of drug transactions, guns to protect drugs and cash, and large quantities of drugs to be sold." Id.

Hodge's home was in the same city where he was to make the anticipated drug delivery, rendering his home a more likely repository of his drug-r elated paraphernalia. Cf. Jones, 994 F.2d at 1057 ("[A]ll three defendants' homes

7

were on St. Croix and thus were relatively near the site of the crime, making all of their homes a likely repository for evidence."). Moreover, as Hodge concedes, probable cause existed to arrest him on drug-related charges, Appellee's Brief at 12, again making it more likely that drug-related evidence would be stored at his home. See Jones, 994 F.2d at 1055-56 (While "probable cause to arrest does not automatically provide probable cause to search the arrestee's home," probable cause to arrest increases "the likelihood that [the arrestee's] residence contains evidence of the crime."); cf. Conley, 4 F.3d at 1207 (Previous arrests and convictions may help to establish probable cause.).

Finally, Abraham, an experienced police officer, believed that Hodge's home would likely contain evidence related to Hodge's drug activities. The magistrate judge was entitled to "give considerable weight to the conclusions of[this] experienced law enforcement officer[ ] regarding where evidence of a crime [was] likely to be found." Whitner, 219 F.3d at 296 (quoting Caicedo, 85 F.3d at 1192).

The cumulative evidence outlined above provided a substantial basis from which to infer that a search of Hodge's home would yield evidence of Hodge's drug-related activities. To be sure, "it would have been preferable if [Abraham] could have supplied more information linking [Hodge's home] to the criminal activity." Whitner, 219 F.3d at 299; see also Jones, 994 F.2d at 1057. Nonetheless, "the fact remains that he did bring the evidence . .. to a magistrate judge, who determined that there was probable cause to issue the warrant[ ]." Jones, 994 F.2d at 1057. "[A] `grudging or negative attitude by reviewing courts toward warrants' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." Id. (quoting Ventresca, 380 U.S. at 108). This preference for warrants further persuades us to hold that the magistrate judge had a substantial basis for finding probable cause.

III. Good Faith Exception

Even if a substantial basis for finding probable cause were lacking, however, the evidence obtained through the

8

search would be admissible under the good faith exception to the exclusionary rule. See United States v. Leon, 468 U.S. 897 (1984).

A.

The District Court found that the good faith exception did not apply in this case because Abraham's affidavit was so deficient as to render reliance on it unreasonable. We exercise plenary review over the District Court's conclusion. See Loy, 191 F.3d at 367 n.5; United States v. Williams, 3 F.3d 69, 71 n.2 (1993).

B.

The good faith exception instructs that suppr ession of evidence "is inappropriate when an officer executes a search in objectively reasonable r eliance on a warrant's authority." Williams, 3 F.3d at 74. "The test for whether the good faith exception applies is `whether a r easonably well trained officer would have known that the sear ch was illegal despite the magistrate[ judge's] authorization.' " Loy, 191 F.3d at 367 (quoting Leon, 468 U.S. at 922 n.23). The mere existence of a warrant typically suffices to pr ove that an officer conducted a search in good faith and justifies application of the good faith exception. Leon , 468 U.S. at 922; Williams, 3 F.3d at 74. Y et there are situations in which an officer's reliance on a warrant would not be reasonable and would not trigger the exception. Leon, 468 U.S. at 922–23. Our Court has identified four such situations:

> (1) [when] the magistrate [judge] issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> (2) [when] the magistrate [judge] abandoned his judicial role and failed to perform his neutral and detached function;
>
> (3) [when] the warrant was based on an affidavit `so lacking in indicia of probable cause as to r ender official belief in its existence entirely unreasonable'; or

        (4) [when] the warrant was so facially deficient that it
        failed to particularize the place to be sear ched or the
        things to be seized.

Williams, 3 F.3d at 74 n.4 (citations omitted).

In the present case, Hodge makes no serious ar gument
that the warrant was false,[1] that the magistrate judge

_____

1. Hodge does argue that Abraham failed to include certain relevant facts
in his affidavit; namely, that officers had "traveled to Hodge's residence
after Hodge's arrest to inquire fr om [his neighbor] whether Hodge had
been home prior to his arrest," that the officers were told that Hodge had
been seen early in the morning, that the officers "entered Hodge's
premises prior to obtaining the search warrant," and that the officers
"misrepresented to [Hodge's neighbor] that Hodge's Mazda Protege had
been stolen." Appellee's Brief at 18. The fact that officers traveled to
Hodge's residence was disclosed in the affidavit. Failure to disclose the
remaining facts does not render the affidavit misleading.

Nor do any of the undisclosed facts undermine the magistrate judge's
finding of probable cause. First, a r eviewing court "should focus not on
what information an affidavit does not include [which may lead to
improper de novo review], but rather on the information it does contain."
Conley, 4 F.3d at 1208. Second, we do not agree with Hodge that his
neighbor's statement that she saw him at home "early in the morning"
would have undermined the showing of pr obable cause. Since the arrest
occurred at about mid-day, the lapse of time between Hodge's spotting
by his neighbor and his arrest was not gr eat. By showing that Hodge
had been at home at most just a few hours befor e the arrest, the
neighbor's statement might actually have bolster ed the showing of
probable cause. Third, we do not agr ee with Hodge that the record shows
that the officers entered his house befor e the warrant was issued. Hodge
relies on his neighbor's affidavit. See App. at 176–77. In that affidavit,
the neighbor first stated that the officers "approached" her and that,
"[w]hile talking to the officers, I observed that they had made entry on
to
the premises and were looking around." Id. Two sentences later, she
stated: "At approximately 3:00 p.m. the officers went into the house and
began a search." Id. at 177. By far the most reasonable reading of the
affidavit is that the officers' initial entry onto the "premises"
consisted of
their entering the property surrounding the house and that they did not
actually enter the house until approximately 3:00 p.m., after the warrant
had been issued. The neighbor did not testify at the suppression
hearing, and no other witness testified that the officers illegally
entered
the house. Moreover, it is appar ent that none of the facts recited in the
affidavit in support of the showing of probable cause were derived from
an illegal entry into the house. Thus, the r eference in the neighbor's
affidavit to the officers' initial entry onto the premises seems entirely

inconsequential for present purposes.

abandoned his independent role, or that the warrant was fatally general. Instead, Hodge contends that the affidavit lacked the necessary indicia of probable cause. Specifically, Hodge asserts again that the affidavit failed to establish a sufficient nexus between Hodge's drug activity and his home. Hodge also asserts that Abraham knew of this deficiency and thus could not rely on the magistrate judge's finding of probable cause.

As our probable cause analysis has already shown, Abraham's affidavit "was not a `bare bones' document" but contained sufficient indicia of probable cause to support a magistrate judge's finding of probable cause. Loy, 191 F.3d at 369. At a minimum, the affidavit was not clearly lacking in indicia of probable cause, but presented a close call. Once the magistrate judge made that call, it was objectively reasonable for the officers to rely on it. See Williams, 3 F.3d at 74.

The officers' reliance on the warrant is further justified by the state of Circuit law at the time in question. As recently as July 2000, our Court, in United States v. Whitner, had declined to "decide whether the fact that [the defendant] appear[ed] to be a drug dealer [was] sufficient under the circumstances of [that] case to conclude that he would be likely to store evidence of his drug dealing at his residence." Whitner, 219 F.3d at 298; see also Jones, 994 F.2d at 1056 (declining "to decide whether in every case the fact that a suspect committed a crime involving cash and/or a gun automatically provides a magistrate [judge] with enough information to approve a search of a suspect's home"). As a result, even assuming error,"the officers could not be expected to know that the magistrate judge made an erroneous probable cause determination" due to insufficient evidence connecting Hodge's house to drug dealing. Loy, 191 F.3d at 368-69. Indeed, the magistrate judge himself could not know whether this Court would ultimately agree with his determination given the unsettled jurisprudence governing cases of this type.

"When judgment calls of this kind are r equired," officers should be able to rely on the magistrate judge's determination of the law. Williams , 3 F.3d at 74. Here the

11

magistrate judge determined that the affidavit established probable cause.

Hodge nonetheless seeks to defeat a finding of r easonable reliance by arguing that Abraham knew that the affidavit was insufficient. Hodge derives this argument from the chain of events following his arrest. After the arrest, Abraham and other officers drove to Hodge's home with Hodge's car, entered the premises, told a neighbor "that the car was stolen," and were told by the neighbor "that she had seen [Hodge] early in the morning feeding the dogs." Appellee's Brief at 7. Hodge argues that Abraham went to Hodge's home to acquire additional evidence, because Abraham allegedly knew that Hodge's arrest combined with Abraham's own opinions regarding the storage of drug-related evidence would be insufficient to establish probable cause. While at the home, the officers not only failed to obtain information establishing a nexus to the home, but learned that Hodge had not been home since early morning. Nevertheless, Hodge contends that Abraham applied for a search warrant and substituted his opinion for the missing factual nexus. Hodge thus suggests that Abraham knew that probable cause was lacking and could not r easonably rely on the warrant.

Hodge's argument is unpersuasive. Abraham's subjective belief regarding the sufficiency of the evidence is irrelevant. The Supreme Court has emphasized that the good faith exception requires objectively, not subjectively, reasonable conduct. Leon, 468 U.S. at 919-20 & n.20, 922 & n.23. Moreover, even if subjective belief wer e relevant, the fact that officers went to Hodge's house, or that they sought additional information, does not show that they knew that their affidavit would be deficient. Instead, the officers appear to have gone to Hodge's suspected residence for the legitimate purpose of confirming that it was indeed Hodge's home.

Having confirmed the location of Hodge's r esidence, the officers properly entrusted their evidence to a magistrate judge to assess probable cause. See id. at 921 ("It is the magistrate[ judge's] responsibility to determine whether the officer's allegations establish probable cause . . . ."). They then relied on the magistrate judge's deter mination and

12

executed the search. The officers' reliance on the search warrant was objectively reasonable, regar dless of their supposed subjective belief. As a result, the good faith exception applies, rendering the evidence seized during the search of Hodge's home admissible.

IV.

Because the magistrate judge had a substantial basis for finding probable cause, and because the officers' reliance on the warrant was objectively reasonable, the evidence seized during the search of Hodge's home is admissible. The order suppressing that evidence is ther efore reversed, and the case remanded for further proceedings consistent with this opinion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit