NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3430
_____

UNITED STATES OF AMERICA

v.

BRANDON CARTER,
             Appellant

_____

On Appeal from the District Court
for the Western District of Pennsylvania
D.C. Criminal No. 2-09-cr-00161-001
(Honorable Joy Flowers Conti)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 10, 2013

Before: SCIRICA, HARDIMAN, VAN ANTWERPEN, *Circuit Judges*

(Filed: July 16, 2013)

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Brandon Carter was indicted for possession of child pornography and receipt of

child pornography, in violation of 18 U.S.C. § 2252(a)(2), (a)(4)(B). The District Court

denied his motion to suppress evidence obtained from a search of his computers, finding

the evidence admissible under the independent source doctrine. Carter entered a conditional plea of guilty to possession of child pornography, and now appeals from the denial of his motion to suppress. He was sentenced to 36 months in prison.

## I.

Carter was arrested on May 13, 2008 for counterfeiting gift certificates and Federal Reserve Bank Notes. His car was impounded, and during an inventory search of the car, police officers found counterfeit banknotes and counterfeit gift certificates made on VersaCheck paper stock. VersaCheck is a software program that allows a person to print his or her own checks.

The police contacted the Secret Service to investigate the counterfeit banknotes. Secret Service Agent Michael Radens began investigating the location of Carter's computer(s), because counterfeiters often used computers and the VersaCheck software was run on a computer. At the time of his arrest, Carter lived with his ex-girlfriend, Stephanie Kennedy, who was evicted from the home on June 1, 2008, while Carter was incarcerated. On June 11, Radens interviewed Kennedy and learned that Carter had two computers that were kept in a spare bedroom, which served as a home office. Kennedy told Radens she had seen a $500 gift certificate on the floor of the office, but had thrown it in the trash.[1] Kennedy told Radens she left all of Carter's property on the back porch of his parents' house when she was evicted, including the two computers. Radens took notes on this interview and began to prepare an affidavit to apply for a warrant to search

---

[1] When Radens showed Kennedy a picture of a counterfeit gift certificate Carter had used at a local retailer, Kennedy told Radens it looked like the gift certificate she had found on the floor of Carter's home office.

the Carter home for the computers. Prior to the interview with Kennedy, Radens instructed Agent Brian Morris to report directly to the Carter home, because he was concerned Kennedy might have warned the Carters the Secret Service was looking for defendant's computers.

Immediately following the interview with Kennedy, Radens rendezvoused with Kernan and Morris at the Carters' residence. They knocked on the door and the rear window, but no one answered. Radens then called defendant's mother, Rochelle Carter, who initially denied the computers were in the house. When Radens told Rochelle Carter that he could get a warrant to search the house for the computers, she said that she would give the agents the computers when she returned home after work. Radens then left to obtain a search warrant, and instructed Morris and Kernan to watch the house in case someone tried to remove the computers. After Radens left, defendant's father, Laverne Carter, came out of the house, and explained to Morris and Kernan that he did not hear the knocking since he was sleeping after working the midnight shift. Laverne Carter told the agents that the computers were in the basement, and signed a consent form permitting a search of the basement.[2] The agents recovered two computers, a Gateway and an HP, from the Carters' basement, and took them to the Pittsburgh field office. Kernan called Radens to tell him they had obtained the computers. Radens did not complete the warrant application.

On June 23, 2008, a magistrate judge signed a warrant authorizing the search of both computers for evidence of counterfeiting. The warrant was based on Radens'

[2] There is a factual dispute whether Laverne Carter was told the agents already had a search warrant.

3

affidavit reciting the facts described above, including the search of the Carter home and the seizure of the computers from the basement. After obtaining the warrant, the agents discovered the hard drive was missing from the HP computer. Radens contacted Kennedy, who was deployed in the Air Force at the time. Kennedy said she did not know if she had the hard drive, but said she would ask her boyfriend to search her belongings for it. Kennedy later contacted Radens and told him that her boyfriend had found the hard drive, and that she had sent it to the Secret Service. The Secret Service received a Western Digital hard drive from Kennedy on July 23, 2008.

On June 25, the Gateway hard drive was imaged. During a search of the Gateway hard drive for evidence of counterfeiting, agents discovered evidence of child pornography. They stopped the search, and obtained a second warrant to search the Gateway computer for child pornography on August 7, 2008. Agents obtained a third warrant to search the Western Digital hard drive on August 21, 2008.

As noted, Carter moved to suppress evidence obtained under all three search warrants, contending the initial search of the Carter home violated his Fourth Amendment rights and the warrants were obtained as a result of that illegal search. The District Court found that even if the initial search of the Carter home was invalid, the evidence was admissible under the independent source doctrine.

## II.[3]

"Typically, the exclusionary rule requires that we suppress evidence obtained as a

---

[3] We have jurisdiction under 28 U.S.C. § 1291. "We review the District Court's denial of a motion to suppress for clear error as to the underlying factual determinations but exercise plenary review over the District Court's application of law to those facts." *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011).

result of an illegal search." *United States v. Stabile*, 633 F.3d 219, 243 (3d Cir. 2011) (citing *Wong Sun v. United States*, 371 U.S. 471, 485 (1963)). But, "[t]he independent source doctrine serves as an exception to the exclusionary rule and permits the introduction of 'evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality.'" *United States v. Price*, 558 F.3d 270, 281 (3d Cir. 2009) (quoting *Murray v. United States*, 487 U.S. 533, 537 (1988)).

Since we agree with the District Court that the independent source exception is dispositive, we do not consider whether the search of the Carter home and seizure of the two computers was unconstitutional. We find the independent source doctrine applies to the initial search of defendant's two computers. Accordingly, the second and third search warrants, based on information obtained in execution of the first search warrant, were also valid.

Evidence that is obtained during an illegal search may be admissible under the independent source doctrine. *See Murray*, 487 U.S. at 537 (quoting *Nix v. Williams*, 467 U.S. 431, 443 (1984) ("When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.") (internal quotation marks omitted). The evidence is from an independent source if "(1) . . . a neutral justice would have issued the search warrant even if not presented with information that had been obtained during an unlawful search and (2) . . . the first search [had not] prompted the officers to obtain the [subsequent] search warrant." *United States v. Herrold*, 962 F.2d 1131, 1144 (3d Cir.

5

1992).

## A.

We review whether the Magistrate Judge had a substantial basis to find the affidavit supported probable cause. *Illinois v. Gates*, 462 U.S. 213, 236-37 (1983). A warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

### 1.

"'A reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant.'" *Herrold*, 962 F.2d at 1138 (quoting *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987)). Probable cause exists if "the issuing magistrate [makes the] practical, common-sense decision [that], given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. "While ideally every affidavit would contain direct evidence linking the place to be searched to the crime, it is well established that direct evidence is not required for the issuance of a search warrant." *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993) ("[P]robable cause can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property.'" (quoting *United States v. Jackson*, 756 F.2d 703, 705 (9th Cir. 1985)).

We explained in *Jones* that an affidavit that supports the inference that contraband

6

will be found in the place described provides probable cause to issue a search warrant. *Id.* at 1056. The defendants in *Jones* stole a large amount of cash, and had ample time to hide the money. *Id.* The affidavit supported a sufficient nexus between the crime and defendants' homes, because it stated a cellphone stolen in the robbery would be found in one of the homes, and another defendant parked a motorcycle likely purchased with the stolen money outside of his home. *Id.* at 1056-57. We found it was reasonable to infer that the money was likely hidden in the defendants' homes, so the affidavit describing the crime and the time frame provided probable cause to issue the warrants to search defendants' homes for evidence of the theft. *Id.*

The only new information discovered through the search of the Carter basement was the brand name and serial number of defendant's computers. Excising this information from the affidavit, there was, as the District Court found, "a surplus of evidence" to support probable cause. The affidavit said the counterfeit gift certificates officers found in defendant's car were likely produced by a computer program, and a witness told Agent Radens she saw a similar gift certificate on the floor of defendant's home office where he kept his computers, and told Radens where the computers were located. The facts in this affidavit requires less of an inference than did the affidavit in *Jones*. We agree that there was a substantial basis for the Magistrate Judge to find the affidavit supported probable cause to search defendant's computers even without the computer brand name and serial numbers. Accordingly, when excising the information obtained from the initial search, the affidavit still supported probable cause to issue the search warrant.

**2.**

"The Fourth Amendment provides that warrants must 'particularly describ[e] the place to be searched and the persons or things to be seized.'" *United States v. Yusuf*, 461 F.3d 374, 393 (3d Cir. 2006) (quoting U.S. Const. amend. IV). General warrants are invalid because they essentially authorize "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). A warrant is not an invalid general warrant when "it does not vest the executing officers with unbridled discretion to conduct an exploratory rummaging through appellees' papers in search of criminal evidence." *United States v. Christine*, 687 F.2d 749, 753 (3d Cir. 1982). In *Christine* we found a warrant authorizing seizure of all defendant's folders, checks, general ledgers, correspondence, and "all other documents, papers, instrumentalities and fruits of the crime" was sufficiently particular, because it limited the search to certain items, so "the magistrate, rather than the officer, determined what was to be seized." *Id.* (internal quotation marks omitted).

Carter contends the warrant was not sufficiently particular without the serial number and brand name of the computers obtained in the allegedly illegal search. Excising the brand name and serial number, the warrant did not authorize a general search of all of defendant's belongings, or even the entire contents of the computers. Instead, it authorized the search of two computers known to belong to defendant, in a location specified in the affidavit, and was limited to evidence of counterfeiting. The warrant described the computers with more particularity than the documents and papers described in *Christine*. Since the warrant did not authorize "a general exploratory

8

rummaging," the warrant had sufficient particularity to comply with the Fourth Amendment.

**B.**

The government must show the unlawful search did not prompt the officers to obtain the search warrant. Murray, 487 U.S. at 542. In *Price* a defendant was arrested after selling methamphetamine to an undercover officer. 558 F.3d at 273. The police found incriminating paraphernalia on Price and in a valid search of his home. *Id.* at 273-274, 279. Evidence found during the invalid search of a locked basement was not excluded because, under the independent source doctrine, it seemed "impossible that the police would not have applied for a warrant to search the basement of the house . . . ." *Id.* at 282.

The police had similar evidence in this case. When defendant was arrested, police found counterfeit banknotes and gift certificates in his car made from a computer program. Kennedy told the police she had seen a counterfeit gift certificate in defendant's home office, and told the police she brought defendant's two computers to his parents' home. Under these circumstances, it is inconceivable the police would not have applied for a warrant to search the Carter home for the computers. Moreover, the District Court found Agent Radens decided to apply for the warrant before the search. He began to draft the affidavit the day before the search, and left to apply for the warrant before the search occurred. Accordingly, the decision to apply for the search warrant was not prompted by the allegedly illegal search.

**III.**

9

For the foregoing reasons we will affirm the District Court's order.